[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The appellant Crossroads Development Associates (Crossroads) has taken an appeal, pursuant to General Statutes 7-250, from a special benefit assessment levied against "two immediately adjacent parcels of land" it owns in North Haven by the Town of North Haven (Town) acting through its agency, the North Haven Water Pollution Control Authority (WPCA). The total assessment of such benefits by the North Haven Water Pollution Control Authority in the amount of $53,882.39 was levied against Crossroads under General Statutes 7-249.
Crossroads' complaint is in five counts. In the first count Crossroads alleges its ownership of "two immediately adjacent parcels of land" in North Haven, one of approximately seven and a half acres known as 6 Devine Street (Premises I) and the adjacent parcel of approximately nine and a half acres known as 158 State Street (Premises II),[1] that on Premises I there stands a commercial office building structure (Crossroads One) completed in May 1989 containing approximately 120,000 square feet of office space and that Premises II consists of vacant land zoned for similar commercial office uses and purposes. It further alleges that the final notice (Notice) on or about March 27, 1992 by the Town acting through the WPCA of special benefit assessments of $53,882.39 against Premises II was for the purpose of constructing certain sanitary sewer system improvements; that approximately six years prior to the March 27, 1992 Notice, Crossroads had applied to the Town and the WPCA for all zoning planning, site plan, building and other approvals to construct Crossroads One, all of which had been granted and that the Town and the WPCA required Crossroads, as a condition precedent to the land use, building and construction approval that Crossroads One, as its sole expense, construct a sanitary sewer line, approximately 775 feet long, along Devine Street, a town street adjacent to the premises as well as to construct an interconnection with this new Devine Street sewer line and the improvements to be constructed upon Premises I and that this was all done and that thereafter, Crossroads One was constructed, completed and interconnected with the Devine Street sewer line. CT Page 5914 Continuing, Crossroads alleges that, in addition to the above, a "stub line" extending within the premises beyond the sewer junction point with Crossroads One" was permitted and constructed for future connection with additional buildings planned for construction upon Premises II" and that in February 1989 the sewer line constructed along Devine Street was accepted and became operational and owned by the Town in February 1989.
Going on, Crossroads further alleges in its first count that approximately three years before March 27, 1992 Notice, it applied to all Town Commissions and municipal authorities for approval to construct two additional office buildings on Premises II, one consisting of 115,000 square feet of floor area and one consisting of 120,000 square feet of floor area which buildings were known as "Crossroads Two" and "Crossroads Three" and that all approvals for these were granted in January 1989 but that such approvals were conditioned on the interconnection of these two buildings with the "stub line" already referred to. Crossroads also alleges that it was at all times "contemplated as a consequence of land use and building approval "by the Town, the WPCA and Crossroads that all proposed and contemplated Crossroads office buildings would be serviced by sanitary sewers along those lines constructed by [Crossroads] and extending from the buildings in question through the line on [Crossroads] lying alone said Devine Street" and that at no time "prior to the Notice [of March 27, 1992] was it contemplated that [Crossroads] would be allowed or required to utilize any sewer system or facility in connection with the use of either Premises I or Premises II other than the Devine Street line constructed by [Crossroads] which is in place and fully functioning." Moreover, it alleges that "Although all sewer lines including the `stub line' have been constructed and are operative, Crossroads Two and Crossroads Three have not yet been built on Premises II." Finally, referring to the March 27, 1992 assessment of claimed benefits of $53,882.39 to Premises II coming as a consequence of the town's future extension of a sanitary sewer system along State Street, Crossroads alleges that, because of its own Devine Street sewer line construction already described, Premises II "receives no special or other benefit from the proposed construction of a sewer line lying along State Street. Accordingly, it contends the Premises II "are not benefited in any manner by the construction project contemplated by the Notice."
In its second count Crossroads realleges all the Allegations CT Page 5915 of the first count and adds the further allegation that "The special benefit levy of assessment exceeds the special benefit accruing to the plaintiff's Premises II in violation of Section 7.249 of the General Statutes."
The third count realleges all the allegations of the first count and adds one further allegation which is that "the special benefit assessment levied against the property of [Crossroads] is invalid as a matter of law as it exceeds the particular dollar benefit accruing to the property of [Crossroads]."
Crossroads, in its fourth count, again realleges all the allegations of the first count and adds one further allegation which is that "the difference between the market value of Premises II after the construction of the contemplated sewer line shall be the same as the market value of Premises II before the construction of the contemplated sewer line, and as a result there is no monetary value of the special benefit conferred upon Premises II."
Finally, the fifth count again realleges all the allegations of the first count and also adds one further allegation which is that "the special benefit assessment levied against Premises II exceeds the special benefit to Premises II by the entire amount of the assessment."
Crossroads, by way of relief, requests a finding that the assessment levied is unlawful and in violation of General Statutes 7-249 because it exceeds the special benefits to its property, a finding that its property is not "especially benefited by the construction of the sewer line project for which the special benefit assessment has been levied", a "repeal" of the special assessment as being invalid as a matter of law, costs of suit and reasonable attorneys fees.
The answer of the Town and WPCA in effect, denies almost all the substantive allegations of Crossroads' complaint.
In a word, although Crossroads' complaint contains five counts which we have set out in detail above, the legal gravamen of each is the same with the ultimate thrust being that the 158 State Street parcel (Premises II) is not benefited in any manner by the installation of the State Street sewer line because Premises II has access to the Devine Street sewer line by the stub connection on Premises I also known as 6 Devine Street. It CT Page 5916 follows, Crossroads basically asserts that, accordingly, the assessment of $53,882.39 of March 27, 1992 on 158 State Street is greater than the increase in market value occasioned by the construction of the State Street sewer line.
At this point it is appropriate to set out certain background facts; additional facts will be set out as necessary. Crossroads real estate involves, in total, approximately seventeen acres of which Premises I encompasses about seven and one-half acres and Premises II about nine and one-half acres. Premises I and II were acquired in a number of parcels and from such assemblage came Premises I and II. Crossroads was desirous of developing the entire seventeen acres as a planned office park and it maintains that it intended to do so for all three phases of the development. This park is variously referred to as Crossroads Office Park and Crossroads Corporate Park.
In any event, the site master plan to develop the entire seventeen acres as a whole for all three phases was granted and all the required approvals from the Town and WPAC on January 9, 1989. Such approvals included inter alia full planning and zoning approvals. A condition of that approval required Crossroads to construct at their expense a sanitary sewer from the intersection of State Street and Devine Street along Devine Street into the Crossroads Office Park property. It was intended that this Devine Street sewer line, by the nature of its required construction, would have the capacity to provide sanitary sewer service to the two office buildings (yet to be constructed) referred to in the complaint to be on Premises II and shown as Crossroads Two and Crossroads Three all as shown on the site master plan approved on January 9, 1989. This Devine Street sewer line was constructed and connected to the office building known as Crossroads One on Premises I. This building on Premises It was completed in 1989 and is now occupied. Neither of the office buildings shown on the approved master plan, of January 9, 1989, which were to be built on Premises II and which the master site plan designates as Crossroads Two and Crossroads Three have yet been constructed, Moreover, the sewer line along Devine Street and into the property, as that has been referred to above, is now being used for the Crossroads One building. The "stub connection" as referred to is in place but no sanitary sewer line from that "stub connection" to "service" either of the buildings proposed to be built on Premises II has ever been construed. Significantly, the approved master site plan for all three phases, as a unified whole, approved on January 9, 1989, lapsed CT Page 5917 on January 20, 1991 at which time only the building on Crossroads One had been completed and the Devine Street sewer line was constructed as set out above. On April 1, 1992, Crossroads "executed" an casement giving the property known as Premises II access to Premises I for the purposes of allowing Premises II in the future to connect up to the Devine Street sewer line on Premises I.
At the hearing before this court challenging the validity of this assessment several witnesses testified. Crossroads produced Robert P. Scoville (an officer of the owner of Crossroads), Joseph S. Mazurek (a civil engineer) and William E. Kane, Jr. (a real estate appraiser). The Town and WPAC produced Phillip W. Ball (a real estate appraiser). Several exhibits were admitted into evidence, including the reports of the experts.
In a trial to the court, the trial judge is the sole arbitrator of the credibility of the witnesses and the weight to be given their testimony. Kimberly-Clark Corporation v. Dubno,204 Conn. 137, 153 (1987); Gorra Realty, Inc. v. Jetmore,200 Conn. 151, 160 (1986). The determination of the credibility of expert witnesses and the weight to be accorded their testimony is for the trier of fact, who is privileged to adopt whatever testimony he reasonably believes to be credible, Connecticut sank Trust Co. v. Incendy, 207 Conn. 15, 34 (1988).
As our appellate courts have recognized, one challenging an assessment of the type imposed by General Statutes 7-249 is met with the presumption as to the "regularity, validity and correctness" of such a special benefit assessment. Town Business Park Associates Number One Limited Partnership v. Water Pollution Control Authority of Simsbury, 213 Conn. 112, 117 (1989); Katz v. West Hartford, 191 Conn. 594, 602 (1983); see Anderson v. Litchfield, 4 Conn. App. 24, 28 (1985). That imposes the burden of proof on the part of challenging the assessment. Anderson v. Litchfield, supra 28. A challenger, however, "may overcome this presumption by introducing competent evidence that the assessment is greater than the increase in the market value of the property due to the improvement." Katz v. West Hartford, supra, 602-603. In other words, the presumption is equivalent to prima facie evidence that the special benefit assessment does not exceed the special benefit, but this presumption "may be rebutted by the production of sufficient and persuasive contradictory evidence." Katz v. West Hartford, supra, 603; Anderson v. Litchfield, supra. 28. The "evidence of the fact that the special benefit CT Page 5918 assessment exceeds the special benefit must have actual persuasive effect, in that it convinces the trier that the nonvalidity of the presumption is as probable as its validity." Anderson v. Litchfield, supra. 28; Bridge Street Associates v. Water Pollution Control Authority, 15 Conn. App. 140, 144 (1988) "The monetary value of the special benefit conferred upon a piece of property by the presence of a sewerage system must be calculated by the difference between the market value of the realty with and without the sewerage system, even though such a measurement may mean that the cost of the sewerage system cannot be fully recouped by the town. Anderson v. Litchfield, supra 29. Carlson-Lang Realty Co. v. Windom, 307 Minn. 368,240 N.W.2d 517 (1976). Whether an assessment exceeds the special benefit to the property, as measured in this fashion, is a question of fact for the trial court. Anderson v. Litchfield, [supra]." Bridge Street Associates v. Water Pollution Control Authority, supra.
Before, however, any of the Crossroads claims that advances that the March 27, 1992 special benefit assessment, can be reached, a threshold issue raised by the Town and WPCA and vigorously denied by Crossroads must be addressed. Briefly, the defendants claim that where the lien of property assessed pursuant to 7-249 attaches on a date (in this case March 27, 1992) on which the property so assessed has no legal or equitable access to sewers then that property must be found to benefit from the proposed sewer construction because the prior zoning approval, in this case the site master plan approved on January 20, 1989 permitting a sewer tie-in or connection with an existing sewer on physically adjacent property has already lapsed prior to that assessment date. This issue of the claimed non-accessibility to the existing sewer on such adjacent property also involves the effects of an easement, granted by Crossroads on April 1, 1992 after the March 27, 1992 assessment by the defendants under 7-249, granting a permanent easement to Premises II for sewer facility installation and interconnection for the construction, erection and use and interconnection with the existing (Devine Street) sewer line and "stub line." The Town and WPCA claim that Premises II (referred to as 158 State Street), the property which is the subject of the disputed assessment in this case, had no such access on March 27, 1992. Crossroads totally disagrees and, in doing so, it rejects the defendants' claims on lapse and it invokes the doctrine of merger.
Crossroads points out that the buildings indicated on the site CT Page 5919 master plan as Crossroads I and Crossroads II have not been constructed because "of prevailing market conditions and other considerations, although it remains the intent of Crossroads to do so at a later date." It further argues that its "intent" as shown by its master plan and its plan of development has been and remains to develop from all the parcels assembled to constitute the approximately seventeen acres it owns a unified office and corporate park project encompassing the entire site. Contending that its property (Premises II) which is the object of the March 27, 1992 assessment and lien is not specially benefited in any manner, Crossroads states the ultimate issue in terms of two "givens". There it postulates first that "given" the circumstance of its prior construction of the Devine Street sewer line which was designed and constructed to service all of the Crossroads development (including the buildings depicted as Crossroads Two and Crossroads Three as well as the already completed building on Crossroads One) thus including that part of its property subject to March 27, 1992 assessment and lien and second, "given" the circumstance of "the continuing accessibility of the entire premises "to the Devine Street line, the issue here thus becomes whether "the premises of Crossroads are specially benefited whatsoever by the construction of the State Street line" to which the assessment in question is addressed. Maintaining that the instant assessment is an attempt by the Town to recoup from Crossroads a part of the cost of the proposed State Street sewer line which does not benefit "the Crossroads parcel in any manner whatsoever", it points to its real estate appraiser's evidence as well as that of its engineer Mazurek. It rejects the position of Ball, the plaintiff's expert, whom it opines argues that because the 1989 Town approvals of the entire site master plan has lapsed, that that event in and of itself creates a separation of the land between what has been developed and what in the future will be developed. It questions Ball's evidence that would tend to indicate that the property which is the subject of the March 27, 1992 assessment had no access to the Devine Street sewer on that date. Reiterating that it is recognized that the property now assessed was just a portion of an assemblage that was "intended to be developed as a single project" to be serviced by the Devine Street sewer line, Crossroads argues that merger of the property, as opposed to its separation, is a matter of the intention of the owner and not of some third party such as the defendants because the entire seventeen acres remains merged for so long as Crossroads considers that appropriate and persists in that intent. Crossroads argues further that, an owner, it has the right to CT Page 5920 "create" the access to the Devine Street sewer line and, therefore, the right to create the interconnection of the Devine Street line with the property which is subject of the March 27, 1992 assessment and lien. This right, it goes on to say, has existed at all times since Crossroads acquired the property and the construction of the Devine Street Line and it continues down to the present time.
On the other hand, the position of the Town and WPCA on this the case can be stated more simply. The master site plan which was approved on January 9, 1989, approved the development of the entire seventeen acres owned by Crossroads as a planned office park. That approval, inter alia, provided for the construction of the office buildings depicted as Crossroads One, Crossroads Two and Crossroads Three. It was conditioned upon the construction in Devine Street and into the Crossroads property of what is the Devine Street sewer which included the "stub connection" which was required to be and has been done entirely at Crossroads' expense. The Devine Street sewer, so designed and constructed was, as noted, to be such as to be capable of furnishing sanitary sewer service not only to Crossroads One but also to the two other office buildings depicted as Crossroads toward Crossroads Three when each of these two were eventually built. Crossroads, admittedly, did so install the Devine Street Line. Crossroads, however, has not constructed either of the buildings depicted as Crossroads Two or Crossroads Three on Premises II. The master site plan for this proposed development of the entire seventeen acres, which was so approved on January 9, 1989, lapsed on January 20, 1991 at which time only the Crossroads One building had been completed. Because the master plan so lapsed on January 20, 1991, that plan was no longer legally viable or legally existent, the Town argues, and with its lapse went the legal right of Crossroads to have sewer lines installed on premises II, to connect to the existing Devine Street Sewer even by way of the "stub connection". Thus, the Town and WPCA contend that certainly, as of March 27, 1992, Crossroads cannot claim the legal right of access to connect any sewer line to be constructed on Premises II to the Devine Street line on Premises I. This is so, they claim, despite the "intent" of Crossroads, at the time of the January 9, 1989 approval and ever since then to develop the entire seventeen acre site as a unified office park.
The defendants also seem to claim inconsistency on the part of Crossroads in its theory of their case. They point out that CT Page 5921 Crossroads' complaint specifically alleges its ownership of "two immediately adjacent parcels of land" with one known as 6 Devine Street and the other as 158 State Street and the theory of its complaint, in speaking of two distinct parcels, is that because of the manner in which the Devine Street sewer was approved and constructed that Crossroads always contemplated that Premises II would tie into the Devine Street line through Premises I. The defendants, now, maintain that Crossroads, recognizes that it cannot prevail relying on its original theory in its complaint because if there were two separate parcels then Crossroads' State Street property (Premises II) had no legal access to Premises I on March 27, 1992 and that, therefore, Premises II was benefited by its access to the State Street sewer line. The Town continues and says, because of this, Crossroads has now changed its theory from "separate parcels" to "merger" and claims that Premises I and Premises II are not two separate parcels but really one parcel because of "merger" and that, as such, because the Devine Street sewer line already serves the entire seventeen acres the extension of the State Street line confers no benefit upon the premises liened pursuant to the assessment of March 27, 1992. Moreover, the Town contends the granting of the April 1, 1992 easement reinforces its contention that Crossroads has changed its theory. Accordingly, the Town and WPCA argue that the evidence and law require a conclusion that the March 27, 1992 assessment and lien be adjudged valid and that Crossroads' appeal be dismissed.
Now we turn to the matter of the lapse on January 20, 1991 of all the approvals granted by the defendants on January 9, 1989 for the development on the entire seventeen acres in North Haven which encompasses Premises I and Premises II.
The witness, Scoville, is vice president of Southern New England Telephone Real Estate which has been the owner of the seventeen acre Crossroads property involved. Scoville, it may be noted, in addition to having degrees in architecture and business administration, has a law degree and is admitted to the practice of law in Connecticut. All the approvals that were necessary from the North Haven town authorities for the master site plan for the entire seventeen acre site from the defendants were granted in January, 1989. The approvals granted in 1989 were valid for one year, and after obtaining two six months extensions all the approvals "lapsed" on January 9, 1991. Scoville testified that they lapsed and there was other evidence on that. On January 9, 1991, neither building depicted on the master plan CT Page 5922 as Crossroads Two and Crossroads Three had been constructed. Actually, there is no evidence that any construction of these buildings had even begun by January 9, 1991. Scoville acknowledged that the defendants' approvals have, as he said, "lapsed" and that Crossroads would have to go back to the North Haven town authorities for new approvals. He, nevertheless, reiterated that it has always been and still the intent of Crossroads to develop the entire seventeen acre site as a unified whole, that it has expended large sums to construct the Devine Street line to that end, that Crossroads Two and Crossroads Three have not been built because of basic economic conditions including difficulty in obtaining financing as well as securing tenants. We also note, parenthetically, that Kane, Crossroads real estate expert, acknowledged both in his testimony as well as his written appraisal report in evidence that the full planning and zoning approvals for Crossroads Two and Crossroads Three had "expired on January 20, 1991."
By ordinary definition, the word "lapse" means "to become void or ineffective," American Heritage Dictionary 737 (1976) or "the termination or failure of a right or privilege through neglect to exercise it within some limit of time or through failure of some contingency." Webster's Third New International Dictionary 1272 (1969). Legal dictionaries are to the same effect. Black defines "lapse" as "the termination or failure of a right or privilege through neglect to exercise it within some limit of time or through failure of some contingency. "Black's Law Dictionary (6th Ed.) 880; See Randon House Dictionary of the English Language, (1967) p. 807. In similar fashion Ballentine defines "lapse" as "A termination, particularly of a right or privilege. A forfeiture caused by one's failure to perform some necessary act." Ballentine Law Dictionary 3d 2d. 1948) p. 709.
The approvals of January 9, 1989 by the Town and WPAC thus, on the evidence, are found to have lapsed on January 20, 1991 and was of no further legal effect from that date forward. Consequently, there was no approval of the master site plan thereafter, and certainly not on March 27, 1992, the date of the assessment and lien in question, the intent of Crossroads to the contrary notwithstanding. The plan for the development of the seventeen acres no longer exists because of the lapse and Crossroads has done nothing, on this record, to undo that. In addition, the easement of April 1, 1992, coming as it did not only after the lapse of approval of January 20, 1991 as well as after March 27, 1992 does not require any different result. The CT Page 5923 conclusion that all the Town approvals granted in 1989 by the defendants have lapsed constitutes, in and of itself a basis for dismissing the appeal of Crossroads regardless of its asserted intent, as to the past and the future of developing the entire seventeen acres as a unified whole. Parenthetically, we note that Crossroads insists that despite the lapse it still has access from Premises II to Premises I to connect any sewer line to be constructed between the stub connection and a sewer line on Premises II. There is no question that Crossroads has the physical access between Premises I and Premises II to do this. It does not, however, have the legal access for the use claimed by Crossroads in this case after the lapse, to do so. In that latter context it must be understood that "the word `access' means one thing in the area of real property law and means an entirely different thing in the area of zoning law." J.B. Stallings v. Prime America Corporation, 192 S.E.2d 147, 149
(1972).
Even though we need not reach Crossroads claim of merger given our conclusion on the matter of lapse, we will discuss that issue because our resolution of Crossroads' claim concerning the applicability of merger constitutes a second ground for dismissing Crossroads' appeal.
We are of the view that given the circumstances of this case, that the doctrine of merger does not even apply. "At common law whenever a greater estate or a lesser estate coincide and meet in the same person without any intermediate estate intervening, then the lesser estate is at once annihilated or `merged' sunk in the greater." 9 Thompson, Real Property (1958 Sup.) 4798 p. 584; 31 C.J.S. Estates 123b, 125; 28 Am.Jur.2d Estates 374, 380; Harrison Adm'r v. Moore, et al., 64 Conn. 344,349 (1894). In order that there be a merger, one of the requisites is that there should be at least two distinct estates, a greater and a lesser. Ibid. It has, therefore, been said "that there can never be a merger of two estates in fee simple to the same land, because only estates subordinate to a fee in duration or privilege may merge with it." 25 Am.Jur.2d, Estates 377 citing Humphreys-Mexia Co. v. Gammon, 254 S.W. 296
(Texas 1923) In this case Crossroads is the fee simple owner of both Premises I and Premises II which it claims merge here. Merger, by definition, however, only applies when, inter alia, whom a greater estate and lesser estate are involved. That is not so here as the estates involved do not satisfy this requisite of the doctrine. Crossroads' intent to use the entire seventeen CT Page 5924 acres as a unified whole for which it received the 1989 approvals does not require a different result. Accordingly, Crossroads cannot invoke merger. Because the doctrine of merger is not available to Crossroads and because Crossroads has no legal access from Premises II to connect any sewer line on Premises II to the Devine Street line that comes onto Premises I including the stub connection, we may now determine whether the March 27, 1992 assessment benefits Premises II also known as 158 State Street.
It is also pointed out that even if the doctrine of merger was applicable to this case, it would not have availed Crossroads. Although Premises I and II are contiguous it has been said that "Contiguous land all owned by the same proprietor does not necessarily constitute a single lot." Schultz v. Zoning Board of Appeals, 144 Conn. 332, 338 (1957); Carbone v. Vigliotti, 222 Conn. 216, 227 (1992). However, "whether a merger of contiguous parcels has occurred depends on the intention of the owner and that issue is factual." Carbone v. Vigliotti, supra. The credible evidence on that aspect must be resolved against Crossroads. Despite its claimed intent Crossroads has not moved to undo the lapse of the master plan for the seventeen acres for which approval was granted. In addition, Premises I has been the subject of a large mortgage. Both premises have been given separate street addresses and are taxed separately. The easement of April 1, 1992 can fairly be regarded in the nature of an admission of Crossroads considering Premises I and II as separate parcels.
Having concluded that Crossroads does not have the continued legal access claims from the liened property to the Devine Street sewer lien, we now turn to challenge of the March 27, 1992 assessment and lien. The resolution of that issue must consider that Crossroad, arguing that it was the owner of the two parcels, i.e. Premises I and Premises II, advanced the evidence of the experts Kane and Mazarek whose opinions were premised upon the claim of continued access of the liened property to the Devine Street sewer line for the purposes claimed by Crossroads in this case. That, of course, we have rejected.
In order to prevail Crossroads has the burden of proof to rebut the presumption of the validity of the lien assessment of March 27, 1992 in accordance with our law set out above. We conclude that Crossroads has not sustained its burden of proof there. CT Page 5925
It was Ball's opinion that if the subject property had access to the Devine Street sewer on March 27, 1992, then the special benefit to that property on that date would be "zero". We have decided otherwise on the access issue and examine Ball's evidence if no such access was found. Ball, in giving his opinion that the assessment was fair and equitable, relied on the market data or direct sales comparison approach to value the subject property in his analysis from the "no access" perspective. His evidence which is deemed credible included the analysis of a number of comparable sales which he adjusted in reaching his conclusion. It was his view that the subject property of 9.001 acres, prior to the installation of sewers, along State Street that had a value of $90,000 per acre or in total a value of $810,090 rounded to $810,000 and that after the installation of such sewers it had a value of $900,100 rounded to $900,000. His opinion was, therefore, was, that as of March 27, 1992, there was an increase in market value of the subject liened property after the installation of sewers along State Street in the amount of $90,000.
Given the March 27, 1992 assessment against the subject property (Premises II) and the increase in its market value of $90,000, the assessment of that date does "not exceed the special benefit accruing to the property". See Town Business Park Associates No. 1 Limited Partnership v. Water Pollution Control Authority of Simsbury, supra. 117; General Statutes 7-249. That assessment is, therefore, valid. For the record Crossroads has not proven that the challenged assessment is invalid, illegal or improper in any manner as claimed in its appeal and it is not entitled to any of the relief it seeks.
Therefore, judgment is entered dismissing the appeal of Crossroads.
Arthur H. Healey, State Trial Referee