LESTER KATZ ET AL. *v.* TOWN OF WEST HARTFORD
(11259)

SPEZIALE, C. J., HEALEY, PARSKEY, SHEA and SPONZO, Js.

Argued October 13—decision released December 20, 1983

*Lester Katz,* for the appellants (plaintiffs).

*John C. Heffernan,* assistant corporation counsel, for the appellee (defendant).

PARSKEY, J. On May 9, 1978, the town council of West Hartford voted to extend an improved dead-end road known as Westcliff Drive. At that time the plaintiffs, Lester Katz and Martin R. Katz, individually and as trustees of the estate of Irving I. Katz, owned property abutting the proposed extension.[1] The improvement to their property resulting from the extension was assessed at $4954.80. The plaintiffs' appeal of the assessment was dismissed by the Superior Court, from which judgment, upon the granting of certification, the plaintiffs have appealed to this court.

The two principal issues involved in this appeal are (1) whether the Westcliff Drive extension was accepted by the town of West Hartford and (2) whether the special assessment was valid.

---

[1] After bringing the appeal below, these plaintiffs conveyed the property to the plaintiff C. P. Development Corporation.

## I

The town claims to have acquired the road in question by dedication. The underlying facts pertinent to this claim are not in dispute. In 1958 the town plan commission approved a subdivision plan which showed Westcliff Drive as a through street. Part of this road had been paved and maintained by the town for years. The balance remained an unimproved "paper street." On May 9, 1978, the town council adopted a resolution that "Westcliff Drive be extended from its present northerly terminus northerly to station 5 + 75 which lies 50′ ± north of the northerly street line of the Morway right-of-way, so called, which runs easterly from Westcliff Drive to Ferncliff Drive all as shown on a plan and profile entitled 'WESTCLIFF DRIVE ROADWAY EXTENSION, JOB 7-77.'" At the same time, the council passed a resolution assessing the abutting property owners for the cost of construction based on a lineal assessment of $61.935 per foot. Irving Katz, who was shown to have a frontage of 80 feet, was assessed $4954.80.

A valid dedication of a public highway requires a manifest intent by the owner to dedicate the land involved for use by the public and an acceptance by the proper authorities or by the general public. *Meder* v. *Milford,* 190 Conn. 72, 74, 458 A.2d 1158 (1983); *Meshberg* v. *Bridgeport City Trust Co.,* 180 Conn. 274, 279, 429 A.2d 865 (1980). In this case the first prerequisite was satisfied by the filing of the subdivision plan with the town plan commission (commission). The issue in dispute is acceptance. The trial court concluded that the approval of the subdivision plan by the commission constituted acceptance.

"A valid acceptance may be either express or implied. *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 442,

430 A.2d 25 (1980). Implied acceptance may be established either by the public's actual use of the property or by actions of the municipality. Id., 440–41." *Meder* v. *Milford,* supra, 75. A variety of actions by a municipality have been held sufficient to furnish a factual basis for a finding of implied acceptance. "Where a municipality grades and paves a street, maintains and improves it, removes snow from it, or installs storm or sanitary sewers, lighting, curbs, or sidewalks upon it there exists a factual basis for finding an implied acceptance of the street by the municipality." *Meshberg* v. *Bridgeport City Trust Co.,* supra, 283. But implied acceptance of a portion of dedicated realty does not necessarily amount to an acceptance of the entire parcel. We have also held that the approval of a subdivision plan does not in itself constitute an implied acceptance. *Meshberg* v. *Bridgeport City Trust Co.,* supra, 280; *Thompson* v. *Portland,* 159 Conn. 107, 115, 266 A.2d 893 (1970).

Although the trial court's conclusion that the approval of the subdivision plan constituted acceptance was erroneous, our inquiry does not end here. While acceptance may be implied from work actually performed on the proposed street it may also be shown in other ways. *Phillips* v. *Stamford,* 81 Conn. 408, 413, 71 A. 361 (1908). Affirmative acts of dominion and control or overt acts recognizing a road as a public highway have been held sufficient to constitute an implied acceptance. *Burroughs* v. *Cherokee,* 134 Iowa 429, 109 N.W. 876 (1906) (ordinance establishing a system of sewers in dedicated streets); *Mulligan* v. *McGregor,* 165 Ky. 222, 176 S.W. 1129 (1915) (ordinance describing the land and directing the construction of sewers therein); *In re Hunter,* 163 N.Y. 542, 57 N.E. 735 (1900) (ordinance directing the construction of sewers on "Rawson St."); annot., 52 A.L.R.2d 263. The resolu-

tions of the town council of May 9, 1978, not only treated the Westcliff Drive extension as a public street but they also proposed to tax abutting owners by special assessment for its construction. "The presumption, always in favor of official action, is that the common council [by levying an assessment for the construction of the extension of the roadway] did not intend to do an illegal act or to trespass upon land belonging to another, but to treat it as the land of the city in trust for use as a street." *In re Hunter,* supra, 549. We hold that the action of the town council authorizing the extension of Westcliff Drive and assessing the abutting property owners for its construction was an unequivocal act sufficient to constitute an acceptance by implication as a matter of law.

It remains to be considered whether the acceptance occurred within a reasonable time. While there is some authority for the proposition that acceptance may occur at any time so long as the offer to dedicate has not been revoked; 11 McQuillin, Municipal Corporations (3d Ed. Rev.) § 33.55, p. 778; we have taken the position that to be effectual an acceptance must occur within a reasonable period of time after the intent to dedicate the property has been manifested. *Meder* v. *Milford,* supra, 75. The mere lapse of time, in itself, is not determinative. Id.; *DiCioccio* v. *Wethersfield,* 146 Conn. 474, 481, 152 A.2d 308 (1959). In *DiCioccio,* for example, we upheld an acceptance after 18 years. Other factors, such as the need and convenience of the public and the pace of the growth of the community, are also relevant considerations. *Meder* v. *Milford,* supra, 75; *DiCioccio* v. *Wethersfield,* supra, 481–82. Ordinarily, what constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of each case. *Cruz* v. *Drezek,* 175 Conn. 230, 239, 397 A.2d 1335 (1978). In this case, the trial

court, having determined that the acceptance was coincident with the offer to dedicate, did not address the question of reasonable time which arises from our analysis of the case. It is necessary, therefore, that the case be remanded for the resolution of this issue.

## II

The plaintiffs contend that the special assessment was adopted in violation of the provisions of the town charter, of the requirements of due process and of the principles governing special assessments.[2] We shall discuss these claims seriatim.

The planning authority is lodged by the town charter in the town plan and zoning commission. West Hartford Charter, c. XIII, § 4. The plans adopted by the commission are subject to the approval of the council. Id. Such plans may involve the location, relocation and acceptance of streets and highways; id., §§ 6, 7; and the making of assessments of benefits and of damages therewith. Id., § 7. In the event that, after receiving written notification of action by the commission, the council indicates that it does not concur with the actions of the commission, the council is authorized to take appropriate action "as if the council were constituted as the planning authority." Id., § 4.

## A

In this case the council was notified in writing that the commission had approved an extension of Westcliff Drive from its then terminus northerly to Beacon Hill Drive. The council thereupon mailed and published

---

[2] Should the trial court determine that the town's acceptance was not within a reasonable time, the questions as to assessment become moot. In the event that the trial court finds acceptance within a reasonable time, however, the plaintiffs' contentions as to the method of assessment remain viable. In the interests of judicial economy and fairness to the parties we decide those issues now.

a notice that it proposed to reconsider the action of the commission with respect to the extension of Westcliff Drive and that for that purpose it was constituting itself the town planning authority. Such action by the council sufficiently indicated its nonconcurrence with the commission's action so as to invoke its planning authority. West Hartford Charter, c. XIII, § 4.

The plaintiffs point to a failure by the commission to comply with the charter provisions in a number of respects. Whether or not the commission conformed to the procedural requirements of the charter has no bearing on the power of the council to exercise planning authority. In cases in which the action of the commission becomes final because of failure of the council to disagree, the charter authorizes an appeal from such action to the Court of Common Pleas (now Superior Court). West Hartford Charter, c. XIII, § 4. In such an appeal it would be appropriate to challenge the commission's action on the basis of the claimed procedural deficiencies. But here, where the council indicated its nonconcurrence and thereby triggered its independent power to act as the planning authority, any procedural deficiencies by the commission are of no consequence.

B

The plaintiff Martin Katz claims that the town council lacked jurisdiction to exercise the powers of the town planning authority with respect to the Westcliff Drive extension because of the failure to give him the notice prescribed by chapter XIII, § 7 of the town charter. Notice was sent by registered mail to "Irving I. Katz, c/o Lester Katz et al." This notice was sufficient.

The trial court found that Lester Katz and Martin Katz owned the subject property as cotrustees of the estate of Irving Katz. In the case of cofiduciaries notice to one is deemed to be notice to the other. *American*

*Surety Co. of New York* v. *McMullen,* 129 Conn. 575, 583, 30 A.2d 564 (1943); *Foster* v. *Mix,* 20 Conn. 395, 400 (1850). The same rule applies with respect to a joint tenancy. *Conrad* v. *Hawk,* 122 Cal. App. 649, 653, 10 P.2d 534 (1932). It also applies to tenants in common who are jointly pursuing the common purpose of selling, leasing or managing their real estate. *Bronnenberg* v. *Indiana Union Traction Co.,* 59 Ind. App. 495, 499, 109 N.E. 784 (1915). Furthermore, when an individual owns property, both in an individual and fiduciary capacity, notice to him in one capacity is also notice to him in the other capacity. *Schwarzschild* v. *Binsse,* 170 Conn. 212, 219, 365 A.2d 1195 (1976); *Brown & Bros.* v. *Brown,* 56 Conn. 249, 251, 14 A. 718 (1888). Since the property appears to be jointly owned, any notice to Lester Katz, either as an individual or a fiduciary, was also notice to co-owner Martin Katz in his individual capacity.

C

Finally, we consider the plaintiffs' assertion that the assessment is invalid because it is claimed to be based on the cost of the improvement to the town rather than on the extent of the benefit to the abutting property. We examine this claim in the light of some additional facts. Although the town council took its action in May, 1978, it did not act in a vacuum. In March, 1977, the board of special assessments resolved that there was a need to extend Westcliff Drive and that any assessment of the cost of construction of this extension should be based on the benefit accruing to abutting owners, and established a front foot formula for determining individual assessments. At the meeting of the town council in May, 1978, council president Streeter noted the prior action of the board of special assessments. Councilor Farr, who moved the adoption of the several resolutions relating to the Westcliff Drive extension,

observed: "In essence what this road does is now it allows them [the abutting property owners] to sell the property as buildable lots and before they weren't so I would assume that that assessment on the property is an actual increase in the value of the property." Thereafter the council adopted a resolution setting the individual assessments on a linear front foot basis.

Special assessments for local improvements, although bottomed on the taxing power, are based on the principle of special benefit to property. "It is a *local* assessment imposed occasionally, as required, upon a limited class of persons interested in a *local* improvement; who are assumed to be benefitted by the improvement to the extent of the assessment . . . ." *Bridgeport* v. *New York & N.H. R. Co.,* 36 Conn. 255, 262–63 (1869). "The demand for the special contribution is justified by the fact that those who are to make it, while they are made to bear the cost of the public work, are supposed to suffer no pecuniary loss thereby, because their property is increased in value to an amount at least equal to the sum they are required to pay. 2 Cooley on Taxation (3d Ed.) 1153; 1 Page & Jones, Taxation by Assessment, §§ 35, 39." *Whitmore* v. *Hartford,* 96 Conn. 511, 524, 114 A. 686 (1921); *Vaill* v. *Sewer Commission,* 168 Conn. 514, 518, 362 A.2d 885 (1975).

On appeal, the introduction of the assessment raises a presumption as to its regularity, validity and correctness. "Until it is proven to the contrary, the city is presumed to have set the assessment legally, and thus introduction of the assessment roll into evidence constitutes prima facie proof that the assessment does not exceed special benefit." *Carlson-Lang Realty Co.* v. *Windom,* 307 Minn. 368, 370, 240 N.W.2d 517 (1976); 16 McQuillin, Municipal Corporations (3d Ed. Rev.) § 44.124; 2 Page & Jones, Taxation by Assessment § 1362. An appellant may overcome this presumption

by introducing competent evidence that the assessment is greater than the increase in the market value of the property due to the improvement. *Carlson-Lang Realty Co.* v. *Windom,* supra.

The trial court correctly found that the plaintiffs had not satisfied their burden of proof, which in this case at the very least[3] meant that they had not introduced sufficient countervailing evidence to rebut the presumption in favor of the special assessment. That property located on a paper street would be enhanced in value by the installation of a paved road would seem to be axiomatic. In this case the special assessment was made on a front foot basis. "Common knowledge proves that not infrequently the front-foot rule furnishes as fair an expression of the proportionate benefits received as any other process." *Bassett* v. *New Haven,* 76 Conn. 70, 76, 55 A. 579 (1903). The plaintiffs, claiming that the Westcliff Drive extension when completed would be a through street, offered expert testimony that their property would diminish in value if it were located on a through rather than on a dead-end street. The fact, if it is a fact, that property located on a dead-end street may be more valuable than similar property on a through street does not gainsay the proposition that

---

[3] Although it is unnecessary to decide in this case whether the plaintiffs were required to do more than introduce rebutting evidence, the policy considerations which underlie the presumption that the property is benefitted to the extent of the assessment are such as to suggest that the presumption should operate until the evidence persuades the trier at least that the nonexistence of the presumed fact is as probable as its existence. "If a policy is strong enough to call a presumption into existence, it is hard to imagine it so weak as to be satisfied by the bare recital of words on the witness stand or the reception in evidence of a writing. And if the judicial desire for the result expressed in the presumption is buttressed by either the demands of procedural convenience or is in accord with the usual balance of probability, it is little short of ridiculous to allow so valuable a presumption to be destroyed by the introduction of evidence without actual persuasive effect." Morgan, "Instructing the Jury upon Presumptions and Burden of Proof," 47 Harv. L. Rev. 59, 82 (1933).

the installation of a paved road in front of a building lot will enhance the value of that lot at least to the extent of a proportionate share of the cost of the improvement.

There is error in part, the case is remanded for further proceedings to determine whether the town's acceptance was within a reasonable time.

In this opinion the other judges concurred.