[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case comes before the court on the objections of defendants Harlan Denny and the Town of Orange to the report of the attorney trial referee to whom the court assigned the case for trial by consent of the parties.
The plaintiffs, Harry and Annette Bartocetti and Cesare and Josephine Tomei, brought this action to quiet title to a strip of land between their house lots on Cricket Lane in Orange. By a motion for summary judgment against defendant David Grillo, they established their title to the strip by adverse possession in an order issued by the court on June 4, 1991 (Celotto, J.). The attorney trial referee then ruled that the strip of land, which had been designated by Grillo as "reserved for future highway purposes" on a subdivision map filed with the Town of Orange on October 4, 1961, had never been accepted by the Town for use as a public highway and that the plaintiffs, as successors in interest CT Page 4765 to Grillo, validly revoked his offer to dedicate the land to use as a public road by filing a Notice of Revocation of Dedication on the land records of the Town of Orange on August 22, 1991. The attorney trial referee concluded that the Town never expressly or impliedly accepted the land as a road and reported that judgment should enter in favor of the plaintiffs to the effect that each pair of abutting landowners own half the land at issue between their houses and that this land is no longer subject to acceptance; for use by the Town as a public street.
The attorney trial referee found that defendant Harlan Denny, who owns land to the north of the plaintiffs' lots, submitted to the Town in 1989 an application for resubdivision approval which included a claim to a right to create a public road on the strip of property at issue, such that his property would have access to Cricket Lane via a road on the area reserved on the Grillo subdivision map for future highway use.
The attorney trial referee found that the defendant Denny's land was not land-locked in that there is access to it from another street, Dogwood Lane. The referee also found that on May 14, 1990 the Town of Orange had expressly voted to discontinue and abandon the portion of the area designated for use in the future as a road that lay to the south of Cricket Road but took no such vote as to the northerly segment, the area in dispute.
Defendant Denny and the Town of Orange moved to correct the referee's report, however the referee denied both motions in toto.
The movants assert that the report of the referee should be, rejected for the following reasons:
 1. The Town of Orange objects that the referee's conclusion, that the dedication of land for future highway use was effectively revoked is contrary to the provisions of 8-18 and 8-26 C.G.S.
 2. Defendant Denny objects to the conclusion that he lacks standing to contest the plaintiffs' title to the strip of land pursuant to the abandoned highway statute, 13a-55
C.G.S., and claims that this conclusion is contrary to, law.
 3. Defendant Denny asserts that the referee was compelled to find that the Town had not abandoned the northerly part of the land designated a future road because the Town formally abandoned the southerly part and must therefore have implicitly accepted the remaining area as a future road. CT Page 4766
 4. Defendant Denny objects to the failure of the referee to conclude that the Town may have a need for a road on the designated area in the future.
Pursuant to 443 P.B., the court must review the reports of attorney trial referees and, if the court determines that a referee has materially erred in his rulings as to the facts, the court may reject the report and refer the matter to the same or another referee or revoke the reference and leave the case to be disposed of in court. The Connecticut Supreme Court has ruled that if a referee's determinations of law are found to be erroneous, the court may render whatever judgment appropriately follows, as a matter of law, from the facts found by the referee. Dills v. Enfield, 210 Conn. 705, 713 (1989).
I. Objections to Factual Findings of the Referee
Of the four objections listed above, items 3 and 4 are, in essence, objections to the factual findings of the referee. Defendant Denny contends that the referee was logically compelled to conclude as a fact that the Town had accepted the entire designated roadway in dispute because in May 1990 it formally abandoned the southerly section.
The document (Ex. E to Stipulated Facts) by which the Town abandoned the southerly section of the paper road created by the Grillo subdivision makes no mention of the northerly section at issue. The affidavit of discontinuance of the selectmen includes the following statement: "Said parcel is a portion of a `paper street' dedicated to but never accepted by the Town of Orange. . . ."
In view of the above express denial by the Town of acceptance of the northerly portion at issue, and his findings of lack of actual use of the area as a road, the referee did not err in failing to draw the contrary conclusion urged by defendant Denny.
Defendant Denny's second factual challenge is that the referee should have made a finding to the effect that the Town may have a future need for the paper road at issue. It appears that the referee did not make findings on this issue because he reached the conclusion that revocation of the dedication was effective, a finding that made future plans of the Town irrelevant to his determination. Because the court finds that the referee erred in the legal determination that the dedication of the contested strip of land to public use was effectively revoked, it is not necessary to have the referee address the claimed failure to make the requested factual finding proposed by defendant Denny.
II. Objections to Legal Conclusions CT Page 4767
The court finds that the referee erred in his legal conclusion that the offer made in the Grillo subdivision plan to dedicate the land at issue for use as a future road could effectively be revoked by the plaintiffs as subsequent owners without filing an application for resubdivision.
Section 8-26 C.G.S. provides in relevant part that "[a]ll plans for . . . resubdivisions . . . shall be submitted to the [planning and zoning] commission with an application in the form to be prescribed by it."
Section 8-18 C.G.S. defines "resubdivision" as "a change in a map of an approved or recorded subdivision if such change (a) affects any street layout shown on such map, [or] (b) affects any area reserved thereon for public use."
The Bartocettis and the Tomeis plainly sought to alter the Grillo subdivision approved by the Town by removing the designation of the area they had acquired by adverse possession as a street layout or an area reserved for eventual public use. Since this effort constituted a "resubdivision" by the terms of the statutory definition set forth above, the provisions of 8-26, required them to submit a resubdivision plan to the planning and zoning commission.
In concluding that a unilateral revocation of a feature of an approved subdivision plan was effective to accomplish the extinguishment of the dedication, the referee failed to give effect to the provisions of 8-26 C.G.S. That Statute contains no applicable exceptions to the requirement of filing a plan, and the plaintiffs have offered no reason why it should be held to be inapplicable.
The plaintiffs rely on case law concerned with the determination whether unimproved "paper streets" designated in subdivision plans have been accepted by a town in various circumstances. In Katz v. West Hartford, 191 Conn. 594, 597 (1983), the Connecticut Supreme Court stated that the approval of a subdivision plan does not in itself constitute an implied acceptance of a road designated on the plan. In that case, the issue was whether the municipality could accept in 1978 a road dedicated on a 1958 subdivision plan. The Supreme Court noted, citing Cruz v. Drezek,175 Conn. 231, 239 (1978), that "[w]hat constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstance of each case." The issue of revocation was not at issue in Katz. The Court made the following statement, 191 Conn., at 598.
 While there is some authority for the proposition that acceptance may occur at any CT Page 4768 time so long as the offer to dedicate has not been revoked; 11 McQuillan, Municipal Corporations (3d Ed. Rev.) 33.55, p. 778; we have taken the position that to be effectual an acceptance must occur within a reasonable period of time after the intent to dedicate the property has been manifested.
This statement does not constitute a ruling by the Supreme Court that actual revocation can be achieved in a manner other than by an application to resubdivide in accordance with 8-26 C.G.S. See 11A McQuillan, Municipal Corporations (3d Ed. Rev'd. 1991) 33.60, page 476: "a dedication by plot can be revoked only by proceeding in accordance with the provisions of the plot act". Numerous courts have held that revocation of a dedication made in a subdivision plan should be made in the manner provided in the subdivision statute. Shoreline Builders Co. v. City of Park Ridge, 209 N.E.2d 878, 883-4 (Ill.App. 1965); Ratchford v. County of Sonoma, 99 Cal.Rptr. 887, 897 (Cal.App. 1972); Brighton Construction, Inc. v. L J Enterprises, Inc., 296 A.2d 335, 340
(N.J.Super. Ch. 1972).
This court finds that the referee erred in his legal conclusion that the filing of a Notice of Revocation of Dedication on the town land records was sufficient to achieve a revocation of the dedication of the land at issue for use as a future highway. If revocation could be so unilaterally and summarily achieved, a land developer could, soon after gaining approval of a subdivision plan, revoke the dedications that may have been essential to approval. The provision in 8-26 C.G.S. for submission of an application to resubdivide provides, by contrast, an orderly method by which a town can consider whether or not to accept a dedication or allow it to be revoked because of a determination that there is no need for it. The plaintiffs' contention that the town could — and must — simply accept all dedications immediately to avoid their revocation, would impose an unnecessary burden on municipalities, and it is unsupported by case law. When the Supreme Court remanded Katz, supra, for a determination whether acceptance of land dedicated for use as a road had occurred within a reasonable time, it implicitly recognized that the municipality might be found to have the ability to accept the dedication twenty years after it was set forth in a subdivision plan. The remand suggests that mere passage of time is ineffective to prevent acceptance of a dedication.
The remaining objection based on a claim of legal error by the referee is defendant Denny's claim that he should have been determined to have standing pursuant to 13a-55 C.G.S. That statute provides that "[p]roperty owners bounding a discontinued or abandoned highway, or a highway any portion of which has been CT Page 4769 discontinued or abandoned, shall have a right of way over such discontinued or abandoned highway to the nearest or most accessible highway. . . ." The court finds that the referee correctly determined that the area at issue had never been accepted as a road by the town and that, not having been accepted, it could not be characterized as having been abandoned. The court finds no error in the referee's legal conclusion that 13a-55
C.G.S. did not confer standing on defendant Denny under the circumstances.
Having found the legal conclusion of the referee upholding the revocation to be erroneous, the court hereby enters judgment determining that the plaintiffs' interests in the area between their respective properties that is dedicated for "future highway use" on the Grillo subdivision map continue to be subject to such dedication until such time as this land is accepted by the Town for use as a road or the dedication is revoked pursuant to application in accordance with 8-26 C.G.S.
The defendant Town of Orange shall recover its costs.
BEVERLY J. HODGSON Judge of the Superior Court