[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs in this case seek a reduction in me sewer assessment levied against them as owners of a single family dwelling in the White Hollow section of North Branford, Connecticut. The plaintiffs own their home known as 7 Skylark Drive since 1969 (having moved there in 1970). The plaintiffs (hereinafter "Manzi") contest the sewer assessment m me amount of $12,300 as filed on November 22, 1994 by the North Branford Water Pollution Control Authority (hereinafter the "WPCA"). The complaint alleges aggrievement and that the amount of the assessment levied by the WPCA against the Manzi property is grossly in excess of the special benefit accruing to the property. Manzi testified they hooked up with the town sewers when available because if they were required to do it at a later date it would be more costly for the hookup. The plaintiffs now argue that the method the WPCA calculated the assessment was not based upon the special benefit. The complaint did not allege an improper method to make such calculations only that the plaintiffs did not receive the benefit for which they were assessed. At trial Frank Connolly, the Town Manager, provided the court with the method of making the assessments for sewers throughout the town and the beneficial assessment made in this case. The WPCA assessment took the total costs after credits; from state and federal grants and divided that amount by the residential units that would be benefited. Notice was given to the Manzis on November 22, 1994 (see Exh. P), together with their request of appeal under § 7-250 of the Connecticut General Statutes.
The defendants in this case provided the court with the history leading up to the installation of a sewer system to serve this area. The "White Hollow" neighborhood of North Branford lies just south of the Durham town line. Houses in the area were constructed in the 1960's and 1970's on lots of approximately one acre serviced by septic tank/leaching field systems. In 1971 the town had system failures requiring a sewer feasibility study to be done that concluded that "The worse source of pollution in the town is the developed area between White Hollow Road and the Durham town line." In 1979 the White Hollow area continued to have waste disposal problems. Ultimately the Department of Environmental Protection of Connecticut ("DEP") ordered a new sewer feasibility study. On November 22, 1989, having determined there is a community pollution problem in the White Hollow area, the DEP ordered the town to evaluate the waste water disposal problems and recommend a solution. The study recommended a sewer CT Page 6914 system to be connected to the Northford pump station as being a cost effective, long term solution to eliminate the sources of pollution. After the Town Council approved the construction, the Manzis connected to the sewers on November 11, 1994.
From all the history and notoriety concerning the problems of the White Hollow area with the water disposal systems, it is no doubt that the home-sites in the White Hollow area were stigmatized. It becomes apparent that even though some properties might not have been subject to frequent septic failures or breakouts, any buyer would be leery to purchase a home in the area that was serviced by a septic system, as in this case, 25 years old. The Manzis testified that their septic system had but one failure. However, other information noted breakouts that are suspicious. A septic failure of the Manzis was noted in the East Shore Health District records that occurred in 1978 was solved by the Manzis putting in an unapproved dry well. All the testimony of other witnesses than the Manzis leads the court to conclude that there may have been other problems with the Manzis' septic system though not recorded. The experts presented by the defendants opined that Manzi would suffer another septic failure in a year from the time they connected to the sewers and that in all likelihood if the sewers were not available, a new system would be necessary at costs from $11,000, estimate of plaintiffs' expert, to a $24,000 estimate by the defendant's expert.
 "The burden of proving that a special benefit assessment is invalid because it exceeds the particular dollar benefit accruing to the land is on the property owner. As is true in all cases, the plaintiff must prove the allegations of his complaint. The standard of proof is that of a fair preponderance of the evidence. Faith Center, Inc. v. Hartford, 39 Conn. Sup. 142, 154, 473 A.2d 342 (1982), aff'd, 192 Conn. 434, 472 A.2d 16, cert. denied, 469 U.S. 1018, 105 S.Ct. 432, 88 L.Ed.2d 359 (1984)." Anderson v. Litchfield, 4 Conn. App. 24, 28, 492 A.2d 210 (1985).
 In reviewing assessments of the type imposed under General Statutes § 7-249, our courts have held that a special benefit assessment imposed by a municipality is presumed to be valid and correct. Katz v. West Hartford, 191 Conn. 594, 602, 469 A.2d 410 (1983).[1] That presumption may be rebutted, however, by the production of sufficient and persuasive contradictory evidence. Id., 603. "Evidence of the fact that the special benefit assessment exceeds the special CT Page 6915 benefit must have actual persuasive effect, in that it convinces the trier that the nonvalidity of the presumption is as probable as its validity."
 The monetary value of the special benefit conferred upon a piece of property by the presence of a sewerage system must be calculated by the difference between the market value of the realty with and without the sewerage system, even though such a measurement may mean that the cost of the sewerage system cannot be fully recouped by the town. Id., 29; Carlson-Long Realty Co. v. Windom, 307 Minn. 368, 240 N.W.2d 517 (1976). Whether an assessment exceeds the special benefit to the property, as measured in this fashion, is a question of fact for the trial court, and its finding as to that fact will not be disturbed unless it is clearly erroneous. Anderson v. Litchfield, supra. See Bridge Street Associates v. Water Pollution Authority, 15 Conn. App. 140, 143.
The plaintiffs in this case offered no evidence to overcome the validity of the assessment. The only evidence offered is that the amount of the assessment did not increase the marketability of the property by the amount of the assessment. The plaintiffs testified the increase was worth $7,000 to them. The expert of the plaintiffs (hereinafter "Estrada") as does that of the defendant (hereinafter "Glendining") argue that the test is how the sewer service affects the market value of the subject property.
Two civil engineer experts were offered for the costs attached to a new sewer system to replace the old system, Robert Criscuolo for the defendant and Russell Waldo for the plaintiffs. Dennis Johnson, director of the East Shore Health District, testified that the proposed system designed by Waldo's plan at a cost in excess of $11,000, and in accordance with percolation tests he supervised would have been rejected. Dennis Johnson testified the proposed replacement over the existing system would affect the ground water already polluted by the old system. Johnson further testified the proposed plan of Waldo violated the public health code. Waldo admitted that the expert of the; defendant, Criscuolo's, design came closer to meeting the health code. Waldo insisted his proposal could be further negotiated with health code officials and changes made for approval.
The present septic system of Manzi is a leaching bed system no longer permitted under the health code which would further CT Page 6916 affect the market value of the subject property. The proposed plan by Criscuolo, from all the evidence, was the appropriate plan and only if price came first would the Waldo plan have been attempted.
As in Pelky v. Coventry Water Pollution Control, Superior Court, Judicial District of Tolland at Rockville, Docket No. CV-92-50313 (April 12, 1993) cited by the defendants, "Private septic systems eventually malfunction and repair or replacement of tanks and leeching fields can be costly propositions and may repulse or deter prospective tenants during the disruption repair." This court further finds that the convenience of public sewers servicing property has a substantial intrinsic value only determinable after a property owner has lived through failures and replacement. The methodology of the Glendining appraisal made a determinable amount for the "stigma" factor of 4%. The court disagrees with the Estrada appraisal conclusion that there is no consistent positive difference in his match pair analysis that can be attributable to the presence of sewers and that the adjustment would be minimal. Estrada did agree that a buyer would be more secure in purchasing property that was hooked up to sewers Estrada opined that a buyer would determine the availability of sewers and the cost to put in a septic system, which he estimated to be $15,000.
Estrada's estimate of the value is based upon an estimate that being there was no definite probability that Manzis' system would fail, the cost of installing a replacement septic system should be reduced by 50%, concluding thereby the special benefit to the home owner is $7,000.
The Glendining analysis utilized a before and after comparison. On page 32 of Exhibit 23, Glendining used three comparable sales and made adjustments as described therein to the Manzi residence. On November 17, 1994 (Exh. W), Glendining provided a preliminary report in which he made a defendable determination of the special benefit for the WPCA counsel of $12,500.
Glendining in his methodology considered the issue of the stigma of the area, because of the multitude of septic failures in the White Hollow area. Glendining relied on the Criscuolo engineering report and in making the adjustments to the market value of the Manzi property used dollar for dollar costs of repair of $24,000 reached by Criscuolo. The methodology of CT Page 6917 Glendining arrived at an increase in the market value the residence in question of $29,000. Glendining could have reasonably used a probable septic failure of one year.
The stigma effect on the market value of the properties was further supported by the testimony of an attorney who represented a large segment of the community clamoring for public sewers. Estrada's testimony on rebuttal to the expert real estate report of the defendant that there was no reduction for the stigma effect is doubtful. Waldo, when asked if it would surprise him if the Manzi septic system had a failure in a year, answered in the negative. Waldo further agreed that the septic system of Manzi was undersized.
Counsel for the defendants suggest that the court increase the assessment is without authority. The argument of counsel for the defendants that the court has the power to "confirm or alter" the value of the assessment under § 7-250 notwithstanding, this court finds no such action is warranted. The question asked by the plaintiffs of the real estate expert of the defendants whether he would pay $29,000 more for the Manzi property with the benefit of a sewer hookup is too speculative.
In conclusion, the plaintiffs have not produced sufficient evidence to rebut the presumption of the validity of the assessment. The plaintiffs have not persuaded this court that the special benefit of $12,300 to the Manzi property should be reduced.
Accordingly, the appeal of the assessment is denied.
Frank S. Meadow Judge Trial Referee