[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Stanley O. Lyman and spouse, Rita S. Lyman ("Lyman") are the joint owners of property at 12 Lakeview Drive, North Branford, Connecticut, ("The Property") who appeal the sewer assessment pursuant to § 7-250 of the Connecticut General Statutes asserting that the sewer assessment exceeds the special benefit to their property.
In Bridge Sweet Associates v. Water Pollution Control Authority,15 Conn. App. 140, 143-144 the court held:
 The defendant clearly had the authority to levy an assessment on the plaintiff's property. General Statutes § 7-249 authorizes municipalities to levy assessments upon property specially benefited by the construction and establishment of a sewerage system. In addition, § 7-249 provides that "[b]enefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment." Section 7-249
provides further, however, that any assessment levied thereunder may not exceed the special benefit which accrues to the property assessed from the installation or presence of the sewerage system.
 "The burden of proving that a special benefit assessment is invalid because it exceeds the CT Page 6890 particular dollar benefit accruing to the land is on the property owner. As is true in all cases, the plaintiff must prove the allegations of his complaint. The standard of proof is that of a fair preponderance of the evidence. Faith Center, Inc. v. Hartford, 39 Conn. Sup. 142, 154, 473 A.2d 342
(1982), aff'd, 192 Conn. 434, 472 A.2d 16, cert. Denied, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359
(1984)." Anderson v. Litchfield, 4 Conn. App. 24, 28, 492 A.2d 210 (1985).
 In reviewing assessments of the type imposed under General Statutes § 7-249, our courts have held that a special benefit assessment imposed by a municipality is presumed to be valid and correct. Katz v. West Hartford, 191 Conn. 594, 602, 469 A.2d 410
(1983). That presumption may be rebutted, however, by the production of sufficient and persuasive contradictory evidence. Id., 603. "Evidence of the fact that the special benefit assessment exceeds the special benefit must have actual persuasive effect, in that it convinces the trier that the nonvalidity of the presumption is as probable as its validity." Anderson v. Litchfield, supra, 28.
 The monetary value of the special benefit conferred upon a piece of property by the presence of a sewerage system must be calculated by the difference between the market value of the realty with and without the sewerage system, even though such a measurement may mean that the cost of the sewerage system cannot be fully recouped by the town. Id., 29; Carlson-Lang Realty Co. v. Windom, 307 Minn. 368, 240 N.W.2d 517
(1976). Whether an assessment exceeds the special benefit to the property, as measured in this fashion is a question of fact for the trial court, and its finding as to that fact will not be disturbed unless it is clearly erroneous. Anderson v. Litchfield, supra.
The burden of proof is on Lyman to show that the special benefit to the property is less than the special benefit sewer assessment.
This case has a long history of appeals from other residents living within the White Hollow section of North Branford where the Lyman property is located. CT Page 6891
The defendant concedes that the installation of sewers must confer a benefit upon the property owner by way of an increase in the market value of the property Cyr v. Town of Coventry, 216 Conn. 436, 442 (1990)Shoreline Ltd Partnership v. North Branford, 231 Conn. 344, 351 (1994). The benefit to a property owner is measured solely according by which the improvement causes the property to increase in market value.
The cost that a town incurs in providing sewers is not dispositive in determining the amount of the benefit to the property. In some cases the sewer system may exceed the sum of the benefit assessments it collects from property owners affected by the system. (See Bridge StreetAssociate, supra).
In order to overcome the presumption of validity of the benefit assessment, a property owner must introduce competent evidence that the assessment is greater than the increase in market value to the property caused by the improvement Shoreline Care Ltd. Partnership v. NorthBranford. Id., 353.
The Lymans argue that they are aggrieved by the assessment of sewer benefits in the amount of $12,300 levied against their property by the North Branford Water Pollution Control Authority (W.P.C.A.).
Lyman is correct in his argument that the court must determine how much has the particular improvement added to the fair market value of the property. Lyman again is correct by reciting the law in stating the monetary value of the special benefit attributable to a piece of property by the presence of a sewer system is calculated by the difference in market value of the reality with and without the sewerage system.
Lyman asserts that the Defendant in arriving at the special benefit to their property was an improper method in making such calculations in that the defendant did not conduct a market value appraisal on the subject property as any other residential properties in the White Hollow/Middletown Avenue at the time the assessment was levied.
Section 7-249 of the Connecticut General Statutes in pertinent part provides as follows:
 "The sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property. Such assessment may include a proportionate share of the cost of any part of the sewerage system, including the cost of preliminary studies and surveys, detailed working plans and specifications, CT Page 6892 acquiring necessary land or property or any interest therein, damage awards, construction costs, interest charges during construction, legal and other fees, or any other expense incidental to the completion of the work. The water pollution control authority may divide the total territory to be benefitted by a sewerage system into districts and may levy assessments against the property benefitted in each district separately. In assessing benefits against property in any district the water pollution control authority may add to the cost of the part of the sewerage system located in the district a proportionate share of the cost of any part of the sewerage system located outside the district but deemed by the water pollution control authority to be necessary or desirable for the operation of the part of the system within the district. In assessing benefits and apportioning the amount to be raised thereby among the properties benefitted, the water pollution control authority may give consideration to the area, frontage, grand list valuation and to present or permitted use or classification of benefitted properties and to any other relevant factors. The water pollution control authority may make reasonable allowances in the case of properties having a frontage on more than one street and whenever for any reason the particular situation of any property requires an allowance. Revenue from the assessment of benefits shall be used solely for the acquisition or construction of the sewerage system providing such benefits or for the payment of principal of and interest on bonds or notes issued to finance such acquisition or construction. No assessment shall be made against any property in excess of the special benefit to accrue to such property. The water pollution control authority shall place a caveat on the land records in each instance where assessment of benefits to anticipated development of land zoned for other than business, commercial or industrial purposes or land classified as farmland forest land or open space land has been deferred."
The defendant argues that by 1980 the mounting failures caused the State Department of Environmental Protection (DEP) to issue an order requiring the town to conduct studies of alternatives to eliminate sources of pollution resulting from failed septic systems. In 1989, CT Page 6893 additional studies of waste water problems were conducted and solutions recommended to the town by Wengell McDonnell (Wengell) and Costello Consulting Engineers who provided a final report (Exh. 3A) dated December 1990.
The defendant oppose the claims made by Lyman in the amended complaint dated January 11, 2000, that the defendants used an improper method in making the calculations of the assessments and that the method of assessment was inconsistent throughout the White Hollow sewer system. In opposition the court was provided with the Wengell report. (Exh 3A).
Lyman argues that the defendant did not conduct a market value appraisal on the subject property or other residential properties in the White Hollow/Middletown Avenue Sewer Project at the time the assessment was levied. Lyman argues that the cost of the sewer construction was to be divided by the total number of the units benefitted and that the system was built and designed to accommodate 1117 properties; that the residential portion of the costs of White Hollow/Middletown Avenue project as pertains to their section should have been calculated on the basis of 480 units. (Plaintiff Post Trial Memorandum page 3 paragraph 11).
Lyman further argues that the method used is inconsistent throughout the White Hollow Sewer system.
Wengell prepared a report in May 1990, and a final report in December 1990. Wengell studied six areas to be serviced by the sewers. The subject property was in area 3 which is included in the plan. The engineers finally decided and recommended that a gravity sewer main from White Hollow to Northford center as being the least expensive method. Under the plan 450 homes should have immediate sewers available with the eventual capacity for an additional 130 homes in secondary areas for a total capacity of approximately 630 homes.
Kurt Weiss the Town Engineer opined as to the construction of the system as to its layout and what options were available to adequately handle the White Hollow flow. Kurt Weiss satisfied this court that the steps taken under all the circumstances were reasonably taken and economically completed by his layout.
Frank Connolly, the Town Manager testified as to the overall cost of the project and what portions were paid by state of Connecticut grants and the General Funds of the town.
The WPCA of the town had concerns over the assessments to the residential properties which led to the town engaging the services of CT Page 6894 Ronald Gledinning (Glendinning) a certified real estate appraiser later to be discussed as to the claim under this case. Glendinning supported an overall residential special benefit of $12,500. He further considered other properties who could tie into the properties challenged by the Lymans.
Robert Criscuolo, (Criscuolo) a civil engineer testified that he made a physical inspection of the subject property. (See Exhibit 9). Criscuolo testified that the Lyman system was on the brink of failure and if the property were purchased by a new family, with an anticipated usage, a failure would occur within one year. The cost of repair to the septic system would be $10,737. Glendinning calculated the discounted cost of repair in his report on the Lyman property at $9,752. Arthur Estrada (Estrada) the expert for the Lyman's estimates the repair at $7500 with a discount of 50% for a discounted value of $3500. The court gives more credence to the Glendinning report and finds the cost of repair to be more likely in the area of $9000 then as low as $3500. Estrada opined that the special benefit to the property was $3500.
Lyman's appraiser, Estrada, found the property to be valued at $130,000 before the assessment in 1994, after the Sewer Project was completed he found the value of the property to be $133,500. He opined in his report that the sewers themselves do not materially enhance or change the value of existing dwelling that have operating septic systems already in place.
The testimony of the defendant's appraiser Glendinning as to values is more reasonably arrived at than the Estrada appraisal.
Glendinning opined that the value of the property after sewers was $144,000 (Exhibit 10 at page 33).
Glendinning determined the before value (without sewers) considering the life of the Lyman's 42 year old septic system; estimated the cost of repair if the system failed, that the value was $129,000. Glendinning testified the neighborhood suffered a stigma from its long history and reputation. The court takes judicial notice of the prior cases in this area. Glendinning compared homes in White Hollow area with homes in remote areas with septic systems but no history of septic problems. Estrada only paired homes from non sewered areas without any history of septic problems.
This court finds that the value opined by Glendinning of $15,500 as the special benefit to the value of the property from the sewers is more realistic. CT Page 6895
This case was ably tried by the plaintiff's pro se who presented substantial evidence on the correctness of the assessment and the methods used to arrive at the special assessment.
The court finds those charges to be within the bounds of what the WPCA is authorized. This court in conclusion finds that the plaintiffs have failed to overcome the presumption that the assessment by the defendant is not valid or correct. The plaintiffs have failed to persuade the court by a fair preponderance of all the evidence presented in this case that the special benefit assessment exceeded the special benefit to the property.
Accordingly, Judgment is entered in favor of the defendant.
Frank S. Meadow Judge Trial Referee