******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOWN OF GRANBY *v.* FRED B. FEINS
(AC 35746)

DiPentima, C. J., and Alvord and Bear, Js.

*Argued October 29—officially released December 23, 2014*

(Appeal from Superior Court, judicial district of Hartford, Hon. Richard M. Rittenband, judge trial referee.)

*Michael L. Moscowitz*, for the appellant (defendant).

*Kevin M. Deneen*, with whom, on the brief, was *Donald R. Holtman*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Fred B. Feins, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, the town of Granby, in this action for a declaratory judgment and injunctive relief. On appeal, the defendant claims that the court improperly concluded that certain property conveyed to him in 1994 had been dedicated to public use as a right-of-way to Lee Cemetery.[1] We affirm the judgment of the trial court.

The court's memorandum of decision and the record reflect the following facts and procedural history. The defendant and his wife, Barbara A. Healy, reside in Granby in their home located on lot 12 in an approved subdivision known as Harvey Heights. Healy acquired the property by warranty deed in 1992. The legal description of lot 12, which refers to a map on file in the Office of the Town Clerk, provides that the lot is bounded on its southwesterly and westerly sides by a "50 foot right-of-way" to Lee Cemetery. In 1994, Robert H. Schultz, as "Secretary and Director of The Hill Realty Corporation, formerly a Connecticut Corporation," conveyed the adjacent fifty foot right-of-way to the defendant by quitclaim deed.[2] At or around the time of the 1994 conveyance, the defendant obstructed passage over the right-of-way by erecting a fence "to keep people from trespassing" on his property. Sometime in 2000, the defendant removed the fence and placed a large cargo container in the path of the right-of-way. He removed the container in 2007, and then placed a gate across the right-of-way.

The plaintiff commenced the present action on November 7, 2011. In its complaint, the plaintiff alleged that the defendant's fifty foot right-of-way had been dedicated, or its existence confirmed, in June, 1960, as a public right-of-way to an ancient burial ground known as Lee Cemetery. The complaint alleged that, for many years, employees of the plaintiff had accessed the cemetery to maintain the grounds, and that members of the public had accessed the cemetery to commemorate the deceased. The plaintiff further alleged that it was authorized to maintain the cemetery pursuant to General Statutes § 19a-308,[3] but that the defendant had barricaded the right-of-way after he acquired fee title in 1994, thereby denying the plaintiff and members of the public access to the cemetery. In its prayer for relief, the plaintiff sought (1) a declaratory judgment that "the [plaintiff] may access the Lee Cemetery over the right-of-way and may maintain the right-of-way for its and the public's purposes," and (2) the issuance of a permanent injunction "restraining the defendant from obstructing the . . . access to the Lee Cemetery over the right-of-way."

The defendant filed special defenses and a counter-

claim. The matter was tried before the court on April 3 and 4, 2013. During the trial, the plaintiff submitted exhibits to demonstrate that the fifty foot right-of-way to the cemetery had been dedicated to public use by The Hill Realty Corporation, the developer of the Harvey Heights subdivision. The plaintiff presented the approved subdivision map, showing the cemetery right-of-way, which had been recorded in the Granby land records in June, 1960.[4] The plaintiff also submitted copies of the deeds to purchasers of various lots in the subdivision, which expressly referenced the cemetery right-of-way, in further support of its claim of public dedication.

The plaintiff called several witnesses to testify as to the use made of the cemetery right-of-way from the time of its dedication to the time of trial. Those witnesses included employees of the plaintiff's Public Works Department, the plaintiff's town planner, a member of the American Legion who placed flags on the Revolutionary War graves in the cemetery, a former owner of property abutting the cemetery, and an individual who served as the curator, archivist, and genealogist of the Salmon Brook Historical Society. After the plaintiff rested, the defendant testified and submitted copies of various deeds and maps, along with photographs of the disputed property. Following the completion of the trial, the parties submitted posttrial briefs and reply briefs.

On May 31, 2013, the court issued its memorandum of decision. The court determined that the fifty foot right-of-way to the cemetery, as shown on the 1960 approved subdivision map and as referenced in Healy's deed to lot 12, was a valid and enforceable right-of-way in favor of the general public. The court noted that aerial maps dating from the 1930s showed the existence of the right-of-way as a trail or path or wood road that reached Lee Cemetery. The court further determined that the right-of-way had been accepted by the general public, as evidenced by testimony at trial that town employees and the general public traversed it on their way to the cemetery. The court rejected the defendant's argument that the 1994 conveyance to him of the fee under the right-of-way affected the existence or validity of the cemetery right-of-way. Finally, the court concluded that the defendant was not entitled to block or in any way to interfere with the use of the right-of-way by the plaintiff or the public.

The court rendered judgment in favor of the plaintiff on the complaint and the counterclaim. The court declared the right-of-way to be valid and enforceable in all respects, enjoined the defendant from interfering with or blocking the right-of-way, and ordered the defendant to remove any obstructions that he had placed in the right-of-way. This appeal followed.

The defendant challenges the court's determination that the fifty foot right-of-way, which was the property

conveyed to him by quitclaim deed in 1994,[5] had been dedicated to public use as a right-of-way to Lee Cemetery. The following legal principles guide our analysis. "A valid dedication requires the presence of two elements: (1) a manifested intent by the owner to dedicate the land involved for the use of the public; and (2) an acceptance by the proper authorities or by the general public." (Internal quotation marks omitted.) *Meder* v. *Milford*, 190 Conn. 72, 74, 458 A.2d 1158 (1983).[6]

"[T]he first prerequisite [is] satisfied by the filing of [a] subdivision plan with the town plan commission . . . ." *Katz* v. *West Hartford*, 191 Conn. 594, 596, 469 A.2d 410 (1983). See also *Vernon* v. *Goff*, 107 Conn. App. 552, 557, 945 A.2d 1017, cert. denied, 289 Conn. 920, 958 A.2d 154 (2008). In the present case, The Hill Realty Corporation, which was the developer of the Harvey Heights subdivision and the predecessor in title to both Healy's lot 12 and the defendant's property, manifested its intent to dedicate the fifty foot right-of-way to public use by filing the subdivision plan with the Granby Town Planning Commission (commission) in June, 1960. It further manifested that intent when it conveyed lot 12 together with "the right, in common with the Grantor and others, to pass and repass over a 50-foot right of way shown on said [subdivision] map as '50 [foot] Right of Way To Cemetery' in the same manner as a public highway is normally used." That conveyance was made by warranty deed recorded on August 20, 1963, in the Granby land records.[7]

Although the subdivision plan was approved by the commission on June 3, 1960, "approval of a subdivision plan does not in itself constitute an implied acceptance." *Katz* v. *West Hartford*, supra, 191 Conn. 597. We therefore must determine whether the second prerequisite, namely, whether there was "an acceptance by the proper authorities or by the general public," was satisfied. (Internal quotation marks omitted.) *Meder* v. *Milford*, supra, 190 Conn. 72.[8] "[C]ommon-law acceptance of property dedicated to the public for a public way may be established by the public's actual use of the property *or* by the actions of the municipality. . . . The public's use of the property must continue over a significant period of time . . . and be of such a character as to justify a conclusion that the way is of common convenience and necessity. . . . The municipal actions that may constitute acceptance include grading, paving, maintaining and improving a street, as well as removing snow from it; the street's exemption from taxation may also be significant."[9] (Citations omitted; emphasis added; internal quotation marks omitted.) *A & H Corp.* v. *Bridgeport*, 180 Conn. 435, 440–41, 430 A.2d 25 (1980).

In its memorandum of decision, the trial court stated that "[t]here was substantial testimony from town officials and others that this right-of-way was used frequently by the [plaintiff] and others as a public

highway." The court further found that the right-of- way had been accepted by the general public, as evidenced by "the substantial testimony that officials of the [plaintiff] and the general public have traversed the right-of-way on the way to the cemetery . . . ."

The court's factual findings are supported by the record. The following evidence was presented at trial: (1) Carol Laun, the curator, archivist, and genealogist of the Salmon Brook Historical Society, testified that she walked over the disputed right-of-way in the late 1960s and early 1970s when she was working on a project to make a note card for every gravestone in Granby; (2) Laun further testified that over the past thirty years, she has walked over the right-of-way and has directed interested persons to use the right-of-way to access Lee Cemetery; (3) three employees of the plaintiff's Public Works Department testified that they drove over the disputed right-of-way to access Lee Cemetery for maintenance purposes in the 1980s; (4) the plaintiff's town planner testified that he walked over the right-of-way to access the cemetery; (5) the town planner further testified that the plaintiff's Public Works Department cared for the cemetery for several years until the owner of the cemetery agreed to maintain it; (6) the owner of the cemetery conveyed it to the plaintiff in the summer of 2012; and (7) a member of the American Legion testified that he traversed the cemetery right-of-way beginning in the early 1960s to place flags on the Revolutionary War gravesites, and that he continued to use that right-of-way until approximately ten years prior to trial.

The defendant claims that the evidence of use was insufficient to establish acceptance of the fifty foot right-of-way by the general public. The defendant's claim requires us to determine whether, as a matter of law, acceptance was established from the facts relied on by the trial court. The defendant argues that "[t]here has not been any evidence of continuous use, or any action to maintain the right-of-way or any improvements by the [plaintiff], including any tax exemption of the right-of-way."

We first note, as previously discussed, that acceptance of property dedicated for public use may be established *either* by the public's actual use of the property *or* by the actions of the municipality. *A & H Corp.* v. *Bridgeport*, supra, 180 Conn. 440. Accordingly, the plaintiff's lack of improvements to the right-of-way does not defeat the dedication if members of the general public actually used the right-of-way to access the cemetery. Moreover, "actual use need not necessarily be constant or by large numbers of the public . . . ." (Citation omitted.) *Meshberg* v. *Bridgeport City Trust Co.*, 180 Conn. 274, 282, 429 A.2d 865 (1980).

The case of *Phillips* v. *Stamford*, 81 Conn. 408, 71 A. 361 (1908), is particularly instructive in the present

case. In *Phillips*, a short strip of land leading from an existing highway to the seashore in a somewhat remote and sparsely settled portion of Stamford was at issue. Id., 411. The town had not worked on or repaired the land dedicated, and the use of the way had been in large part by pedestrians during the summer season. Id., 414. The plaintiff claimed that the use made of the property was insufficient to establish public acceptance of the disputed strip of land. Id., 411. Our Supreme Court disagreed and held: "The user of this locus as a highway does not appear to have been an extensive one, or one participated in by large numbers of the general public. But that fact is not one fatal to the court's conclusion. It is not essential to the creation of a highway by dedication and acceptance that large numbers of the public participate in the user, or that the user be one which results in a large volume of travel. Each situation must be judged in relation to its own surroundings and conditions, and with a regard for the number of persons who would have occasion to use the way. . . . It is only necessary that those who would be naturally expected to enjoy it have done so at their pleasure." (Citation omitted.) Id., 413–14.

Under the circumstances of the present case, the court reasonably could have concluded that the evidence presented regarding the use by the public was sufficient to establish acceptance of the fifty foot cemetery right-of-way. Employees of the plaintiff used the right-of-way to access the cemetery whenever the grounds needed to be mowed or maintained. Members of the public visited the cemetery via the right-of-way for, inter alia, research and historical purposes. Flags were placed on the gravesites of Revolutionary War soldiers at appropriate times during the year. The use was not constant or by large numbers of people, but the use evidenced acceptance for the purpose for which the right-of-way had been dedicated. The subordinate facts, when subjected to these principles, are sufficient to justify the court's conclusion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Lee Cemetery has been a cemetery since the 1700s and contains several Revolutionary War gravesites.

[2] The quitclaim deed conveyed "all such right, title, interest, claim and demand whatsoever" as the releasor had in "one certain piece or parcel of land, with all improvements thereon, located on the Northerly side of Harvey Road, also known as Harvey Drive, in the Town of Granby, County of Hartford and State of Connecticut, being shown as 'Traveled Way to Cemetery' and '50 [foot] Right of Way' on a map entitled 'Section I Harvey Heights Property of The Hill Realty Corp. Lost Acres Road Granby Connecticut Scale 1"=100' February 1960 Survey By Harold R. Sanderson C.E. & L.S. Bloomfield Connecticut' which map is on file in the Office of the Town Clerk of said Granby . . . ."

[3] At the time of trial, General Statutes § 19a-308 provided: "In any town in which there is a burial ground or cemetery containing more than six places of interment and not under the control or management of any currently functioning cemetery association, which has been neglected and allowed to grow up to weeds, briars and bushes, or about which the fences have become broken, decayed or dilapidated, the selectmen of such town may

annually cause such burial ground to be cleared of weeds, briars and bushes, and may cause its fences or walls to be repaired and kept in orderly and decent condition and its memorial stones to be straightened."

Section 19a-308 was amended by No. 14-217 of the 2014 Public Acts. The revisions, however, are not material to our decision.

[4] The approved subdivision map shows the disputed right-of-way, located between lot 12 and lot 14, as "50' RIGHT OF WAY TO CEMETERY" and "TRAVELED WAY."

[5] A quitclaim deed has the force and effect of a conveyance to the releasee of all the releasor's right, title, and interest in and to the property described therein, except as otherwise limited therein, but without any covenants of title. "It is well settled that a quitclaim deed . . . conveys to the grantee [only] whatever interest the grantor has in the property." *Socha* v. *Bordeau*, 277 Conn. 579, 588 n.7, 893 A.2d 422 (2006). Accordingly, if the property owned by The Hill Realty Corporation was subject to the fifty foot cemetery right-of-way at the time it conveyed it to the defendant in 1994, the defendant took title subject to that same fifty foot cemetery right-of-way.

[6] "Whether there has been a dedication and whether there has been an acceptance present questions of fact." *Meshberg* v. *Bridgeport City Trust Co.*, 180 Conn. 274, 279, 429 A.2d 865 (1980). "The trial court's findings of fact are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Bethlehem* v. *Acker*, 153 Conn. App. 449, 466,    A.3d    (2014).

[7] In support of his claim that The Hill Realty Corporation did not manifest its intent to dedicate the property in dispute to public use, the defendant argues that the fifty foot right-of-way, as depicted on the subdivision plan, ends at the boundary line of the subdivision property. In order to reach Lee Cemetery, the path would have to continue over additional properties now owned by Frye and Bombard (the first names of these individuals do not appear in the record). As conceded by the plaintiff at trial, the land records do not disclose any recorded easements over the Frye and Bombard parcels to access the cemetery. The defendant claims that the lack of recorded easements over the Frye and Bombard parcels defeats the purpose of the fifty foot right-of-way shown on the approved subdivision plan because individuals would have to trespass on those parcels to reach the cemetery.

The owners of the Frye and Bombard parcels are not parties to this action. Their rights cannot be asserted by the defendant to defeat the plaintiff's claims. "[G]enerally speaking, a person has no standing to assert the rights of another . . . ." *In re Tayquon H.*, 76 Conn. App. 693, 698, 821 A.2d 796 (2003). See also *Sadloski* v. *Manchester*, 235 Conn. 637, 643, 668 A.2d 1314 (1995).

[8] "A valid acceptance may be either express or implied." (Internal quotation marks omitted.) *Katz* v. *West Hartford*, supra, 191 Conn. 596. No evidence was presented at trial to show that the plaintiff expressly accepted the right-of-way.

[9] No evidence was presented at trial with respect to the taxation of the disputed right-of-way.